[No. 10806.  Department One.  October 27, 1913.]

J. F. O'NEILL, *Appellant,* v. THE TOWN OF AUBURN *et al.,* *Respondents.*[1]

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — CONTRACTS — VALIDITY—INTEREST OF CITY OFFICERS. A contract for a public improvement is not invalidated by the interest of city officials, under Rem. & Bal. Code, § 7750, where they had no interest in the contract when it was let, and it merely appears that, after changes in the specifications, the contractor purchased material from corporations in which they were interested, and paid for the same in the usual course of business, without any agreement to pay from the proceeds of the contract.

SAME — ASSESSMENTS — OBJECTIONS — REVIEW. Objections to the justness of a special assessment, as affected by the proper performance of the contract, must be made upon the hearing and confirmation of the assessment, or on appeal therefrom.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 13, 1912, dismissing an action for an injunction, upon sustaining a challenge to the sufficiency of the evidence. Affirmed.

*M. E. Brewer, Jno. Mills Day,* and *Will H. Thompson,* for appellant.

*John W. Roberts,* for respondents.

[1]Reported in 135 Pac. 1000.

CROW, C. J.—This action was commenced in the superior court for King county by the plaintiff, to enjoin the town of Auburn and its officers from paying for a certain street and drainage improvement which was then being constructed, partly at the general expense of the municipality and partly upon the special assessment plan. The trial court declined to continue in force a restraining order issued upon the filing of the complaint, or to issue a temporary injunction. The work thereafter continued to completion, and payment therefor was made from the general funds of the town and by local improvement bonds; a special assessment having been made and confirmed, upon due notice, after the commencement of this action and before its trial upon the merits. The plaintiff is a citizen, taxpayer, and owner of certain real property charged by the special assessment. Upon the trial, he seems to have proceeded upon the theory that the court should grant him relief under his general prayer requiring the contractors, who were made defendants, to account for moneys and bonds received by them for the improvement. At the close of the plaintiff's evidence, counsel for the defendants challenged its sufficiency. This challenge was sustained and the case dismissed. The plaintiff has appealed.

The important and only contention of counsel for appellant which we deem it necessary to notice is that the contract for the construction of the improvement was void, and failed to furnish the contractors any legal right to payment therefor, because of the alleged interest of the mayor and a councilman in the contract. The town of Auburn is a municipal corporation of the fourth class, and counsel for appellant invoked the provisions of Rem. & Bal. Code, § 7750 (P. C. 77 § 425), relating to such towns and their officers, reading as follows:

"No officer of such town shall be interested, directly or indirectly, in any contract with such town, or with any of the officers thereof, in their official capacity, nor in doing any work nor furnishing any supplies for the use of such town,

or its officers in their official capacity; and any claim for compensation for work done or supplies or materials furnished in which any such officer is interested shall be void, and if audited and allowed, shall not be paid by the treasurer. Any wilful violation of the provisions of this section shall be ground for removal from office, and shall be deemed a misdemeanor, and punished as such."

On June 12, 1911, the town council accepted the bid of Ollar-Robinson Company, contractors, for the construction of the improvement, and soon thereafter a formal contract was executed. No evidence has been called to our attention indicating that either the mayor or councilman had any interest whatever in the contract at that time. Indeed, we are not able to see from the briefs of counsel that it is seriously contended that the mayor or councilman then had any such interest, either present or prospective. After the construction of a portion of the pavement, it was agreed between the council and the contractors that, for the remaining portion of the pavement, a concrete base should be substituted for the crushed rock base as originally agreed upon; the original contract price, however, to remain unchanged. The reason assigned for this change was that there was a dearth of crushed rock supply and the contractor was unable to procure it; and the season being advanced, it was necessary and to the advantage of the public that the street be promptly opened; and this could be more readily done by using the concrete base, material therefor being available.

The contractors then had on hand a car load of cement which they proposed to use in the construction of the concrete base. This cement was rejected by the inspector for the town, evidently because of its inferior quality. Thereafter, the contractors were under the necessity of purchasing cement elsewhere to complete the improvement. They thereupon purchased some cement from a corporation in which the mayor was interested to the extent of being the owner of a considerable portion of its capital stock; and also purchased some cement from a corporation in which a council-

man was interested to the extent of being a stockholder and the manager thereof. The cement so purchased was used by the contractors in completing the improvement. Apparently the corporations in which the mayor and councilman were stockholders, and from which the cement was purchased, were to be paid, and were actually paid by the contractors, in the usual course of business. Indeed, it is not contended that they were to be paid, or were paid, with moneys, warrants or bonds coming to the contractors from the town in payment for the construction of the improvement.

Touching the matter of the condemnation by the inspector of the cement which the contractors had on hand, necessitating their purchase of other cement, we adopt the remarks of the learned trial court made upon disposing of the challenge to the sufficiency of the evidence as follows:

"While there is a suggestion that the condemnation was by reason of influence brought to bear by these city officials, yet there is no proof of it; and the court could not say as a necessary consequence that, because this car of cement was condemned by the inspector, the condemnation was influenced or brought about by these defendants city officials. Whatever may be the fact, there is no proof of it before the court."

These facts we have gathered largely from briefs of counsel for appellant and the remarks of the court made in disposing of respondents' challenge to the evidence. We have felt justified in taking the facts from these sources, since they are apparently but little in dispute, and especially since counsel have not favored us with citations to the evidence in the voluminous statement of facts bearing thereon. We therefore regard appellant's contentions as resting upon the simple fact that the contractors purchased and paid for, in the usual course of business, material to be used in the improvement from corporations in which the mayor and councilman were interested, without the existence of any understanding as to such purchase when the construction contract was entered into or when the cement was condemned; and

without any agreement to pay for the same with moneys, warrants or bonds coming to the contractors from the city. Does this create such an interest in the construction contract on the part of the mayor and councilman as will defeat the contractors' right to payment upon the completion of the improvement? Does it render the contract void and destroy the jurisdiction of the town council to proceed thereunder and pay for the improvement upon its completion?

Counsel for appellant rely principally upon the decision of this court in *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204. A reading of that decision will plainly show that the mayor of Northport was interested in the contract from its very inception, and that his interest and profit therein was dependent on the contract being entered into and the contractor receiving pay therefor from the city. The mayor of Northport was a stockholder and the manager of the corporation that sold lumber to the contractor for use in making the improvement, and as such manager he agreed with the contractor to receive, and did receive, in payment for the lumber so sold the warrants of the city to be issued, and which were issued, to the contractor in payment of the contract price of the improvement. This was all done in pursuance of an understanding with the mayor, as such manager, before the city and the contractor entered into the contract for the construction of the improvement. Under these facts, the contract was held void in that it was in violation of Ballinger's Code, § 958, being Rem. & Bal. Code, § 7702 (P. C. 77 § 363), relating to cities of the third class and their officers; which section is in substance the same as § 7750 above cited, relating to towns of the fourth class and their officers. The case of *Shaw & Hodgins v. Waldron*, 55 Wash. 271, 104 Pac. 272, 28 L. R. A. (N. S.) 735, involving a special assessment of the city of Snohomish, differs from the *Northport* case only in that the sale of lumber to the contractor, by a firm of which the mayor of Snohomish was a member, was in pursuance of an under-

standing arrived at after the awarding of the improvement contract to the contractor. The contractor, as in the *Northport* case, agreed to pay, and did pay, such firm for the lumber with warrants to be issued, and which were issued, by the city to him for his performance of the contract; thus making payment to the mayor's firm dependent upon payment by the city to the contractor. That decision shows that the court entertained the view that such an arrangement voided the contract to the extent of the amount the mayor's firm was to receive of the warrants; though seemingly that question was left to be determined in another case then pending. Our attention is also called to the decisions in *Miller v. Sullivan*, 32 Wash. 115, 72 Pac. 1022; *State ex rel. Gladwin v. Cheney*, 67 Wash. 151, 121 Pac. 48; and *Gantenbein v. Pasco*, 71 Wash. 635, 129 Pac. 374, 131 Pac. 461. These decisions, however, deal with a situation where the councilmen's interest was so plainly manifest at the inception of the contract that we deem it unnecessary to notice them further.

In the case before us, we have seen that neither the mayor nor councilman had any interest whatever, present or prospective, in this contract at its inception; nor any interest thereafter in such contract, unless such interest is to be inferred from the mere fact that the contractors purchased from corporations, in which the mayor and councilman were interested, cement for the completion of the improvement after the contract therefor had been awarded to them by the town, and after changes in the specifications had been consented to by the city. This alone, we think, does not warrant the conclusion that the mayor or coucilman had any interest in the contract for the construction of the improvement. Nothing but mere surmise or suspicion could call for any such holding. There is no substantial evidence to support such a view.

Some contention is made touching the proper performance of the contract as affecting the justness of the special assessment. This manifestly is not a question going to the

fraudulent entering into the contract, or to its validity as affected by the interest of the mayor or councilman which might affect the town's jurisdiction in the matter; hence it is a matter to be reviewed only upon the hearing and confirmation of the assessment, or upon a direct appeal therefrom to the courts. Laws of 1911, pp. 441, 453 (3 Rem. & Bal. Code, § 7892-1 *et seq.*; Id., § 7892-22). *Rucker Brothers v. Everett,* 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582. This contention does not present a question of jurisdiction, but simply a question of the correctness of the judgment of the council in accepting the work and confirming the assessment roll, which judgment must be reviewed, if at all, upon appeal to the courts as provided by the Laws of 1911, p. 453, § 22 (3 Rem. & Bal. Code, § 7892-22), above cited.

We are of the opinion that there has been no such showing as warrants the holding that the town officers had no jurisdiction because of the alleged invalidity of the contract resting upon the alleged interest of the mayor and councilman therein.

The judgment is affirmed.

PARKER, MOUNT, and GOSE, JJ., concur.