[No. 19163.   Department One.   July 7, 1925.]

## DIRECTORS OF SCHOOL DISTRICT No. 302, THURSTON COUNTY, *Respondents*, v. M. A. LIBBY *et al.*, *Appellants.*[1]

PARTIES (51)—DEFECTS AND OBJECTIONS—WANT OF CAPACITY OR INTEREST.   Where the complaint in a taxpayer's suit against the directors of a school district, brought for the benefit of the district, is adopted by two of the defendant directors, constituting a majority of the board, the action, in legal effect, becomes an action by the district, obviating any objection to plaintiff's capacity to sue for the district.

SCHOOLS AND SCHOOL DISTRICTS (26)—CONTRACTS—VALIDITY—INDIVIDUAL INTEREST.OF OFFICERS.   Rem. Comp. Stat., § 4783, prohibiting any school director from having any pecuniary interest, directly or indirectly, in furnishing any supplies or accepting any compensation for services, is violated by a contract employing a director's farm servants to haul children to school with the director's team, it appearing that the director received a large proportion of the money paid for such hauling, and often himself performed the service.

SAME (27) — CONTRACTS — INDIVIDUAL INTEREST OF OFFICERS — REMEDIES OF DISTRICT.   Under Rem. Comp. Stat., § 4783, making it unlawful for any school director to be interested in certain school district contracts, the district may maintain an action against the director to recover the amounts illegally paid out.

SAME (27).   The criminal liability of a school district director for not sending his children to school is no defense to an action to recover money illegally paid to him for hauling the children to school, without which he could not have sent them, as he would not have been criminally liable if there had been any sufficient reason for not doing so.

Appeal from judgments of the superior court for Thurston county, Wright, J., entered March 21, 1924, upon findings in favor of the plaintiffs, in an action to recover money paid on an illegal contract. Affirmed.

[1]Reported in 237 Pac. 505.

*Troy & Yantis,* for appellants.

*Roscoe R. Fullerton* and *James O. Marts,* for respondents.

PARKER, J.—This action was originally commenced in the superior court for Thurston county in the name of the state, by Alfred Radburn as relator, he being a resident and taxpayer of school district No. 302 of Thurston county, seeking for the benefit of the district recovery from the defendants M. A. Libby and Edith Libby, as a marital community, and J. F. Gordon and L. E. Williams of the sum of $402.50, alleged to have been unlawfully received by them from the funds of the district in pursuance of contracts which were rendered unlawful by the community composed of Mr. and Mrs. Libby having pecuniary interests therein, Mrs. Libby being one of the directors and the clerk of the school district. The directors, at the time of the commencement of the action, successors to Mrs. Libby and her co-directors, were made defendants by the original complaint; it being therein alleged that they had refused to attempt, by suit or otherwise, recovery from the other defendants of the moneys in question. Two of these directors, in behalf of the district, responded to that complaint, denying the allegations therein as to their refusal to seek recovery from Mr. and Mrs. Libby, Gordon and Williams, adopting the allegations of the complaint in so far as there was stated therein a cause of action against those defendants, and praying for judgment against them in behalf of the district as prayed for by Radburn in the original complaint. Mr. and Mrs. Libby and Gordon and Williams denied the allegations of the complaint touching the claimed illegality of the contracts. The issues being so made, the cause proceeded to trial in the superior court sitting without a jury, and resulted in findings and judg-

ments awarding recovery jointly against Mr. and Mrs. Libby and Gordon for $77, and jointly against Mr. and Mrs. Libby and Williams for $325.50. From this disposition of the cause, Mr. and Mrs. Libby, Gordon and Williams have appealed to this court.

Some contention is made in behalf of Mr. and Mrs. Libby, Gordon and Williams that Radburn has no right to commence or maintain this action. This, we think, becomes of no moment in our present inquiry, since two of the directors, that being a majority of the board of directors, have for the district adopted the allegations of Radburn's complaint in so far as it alleges cause for recovery by the district against Mr. and Mrs. Libby, Gordon and Williams, and have prayed for recovery accordingly. This, to our minds, makes the action now in legal effect simply one by the district against Mr. and Mrs. Libby, Gordon and Williams. Manifestly, it can be so maintained.

The facts controlling of the merits of the case may be summarized as follows: During the whole of the period in question, Mr. and Mrs. Libby were husband and wife, living together with their three children on their farm in the school district, some two or three miles from the schoolhouse of the district. During the whole of the period in question, Mrs. Libby was one of the duly qualified and acting directors of the district, being at the same time clerk of the district. For sometime during the fall of 1921, prior to November 30th, Mr. Libby transported their children and one or two other children to and from the school of the district. He presented to the board a claim for compensation for these services, payment of which was refused, evidently because it was thought to be an illegal contract and claim in view of the fact that the allowing of the claim would be the paying for services upon a contract in which the community composed of

Mr. and Mrs. Libby were pecuniarily interested. On December 5, 1921, a contract was entered into between the school district and Gordon, named in the contract as F. Gordon, but signed as J. F. Gordon, reading as follows:

"This contract is made and entered into this 5th day of Dec. '21, between School Dist. 302 of Thurston Co., and F. Gordon. The latter agrees to transport by vehicle, the M. A. Libby children, to and from Maple Spring Farm and School House, beginning the 30th day of Nov., '21, and continuing until close of school year, unless conditions prove the road impossible to traffic.

"It is agreed the said F. Gordon be paid $3.50 per day, for each day of actual service."

Thereafter on January 9, 1922, Gordon having become unable to continue the services contemplated by that contract, a new contract of exactly the same nature covering the remainder of the school year was entered into between the school district and Williams. Both of these contracts were the result of prior negotiations between Mr. Libby, acting for the community, and Gordon and Williams. Touching the question of the interest of Mr. and Mrs. Libby as a community in these contracts and the compensation which by their terms was to be paid to Gordon and Williams, the trial court found:

"That prior to the employment by the board of said school district of the defendant Gordon and the defendant Williams, the defendant M. A. Libby agreed with the defendant Gordon and subsequently with the defendant Williams that they should come to his ranch, live at his home, use his team and conveyance and transport the Libby children to school; that they were to receive Thirty Dollars ($30.00) per month and the difference between that amount and the amount received from School District No. 302, to wit: the difference between Thirty Dollars ($30.00) and Seventy

Dollars ($70.00) was to belong to the defendant M. A. Libby and his wife, Edith Libby.

"The court further finds that during the period of time covered in the contracts of employment of said Gordon and said Williams for transporting the Libby children, the defendant M. A. Libby, usually on each Friday and at times on other days of the week, would haul the said children himself to the said school; that both of the defendants Gordon and Williams worked on the farm or ranch premises of the defendants M. A. Libby and his wife, Edith Libby, doing chores, plowing, fence building and other miscellaneous farm work.

"The court finds that the said School District No. 302 paid to the defendant J. F. Gordon, Seventy-seven Dollars ($77.00) out of the funds of said school district No. 302; and that the board of directors of said district paid to the defendant L. E. Williams out of the funds of said school district, the sum of Three Hundred Twenty-five Dollars & fifty cents ($325.50) covering a period of time between December, 1921, and June 30, 1922, both inclusive; that both said amounts were paid the defendants under the conditions above stated."

We think the evidence fully supports these findings and further warrants a finding, though not expressly made by the trial court, that Mr. and Mrs. Libby received through Gordon and Williams a large proportion of the money received by each of them from the school district, as well as receiving from each of them labor and services rendered upon their farm in pursuance of an agreement with them entered into before the making of the transportation contracts with the district.

Our school law (§ 4776, Rem. Comp. Stat.) [P. C. § 4979], expressly authorizes school directors "to provide and pay for transportation of children to and from school . . . when in their judgment the best interests of their district will be subserved thereby." This manifestly is the authority under which the school

directors assumed to act in making the contracts with Gordon and Williams. The authority of the school directors in this respect, however, is not without its limitations. Manifestly, as a declaration of public policy, § 4783, Rem. Comp. Stat. [P. C. § 4985], provides:

"It shall be unlawful for any director to have any pecuniary interest, either directly or indirectly in the purchase of school sites or in the erection of schoolhouses, or in the warming, ventilating, furnishing, repairing or insuring of the same, or to be in any manner interested in or connected with the furnishing of supplies for the maintenance of schools, or to receive or accept any compensation or reward for services rendered as director . . ."

It seems plain to us that the contracts here in question, in view of the interests of Mr. and Mrs. Libby as a marital community therein, fall under the ban of this statute. By our decision in *Miller v. Sullivan,* 32 Wash. 115, 72 Pac. 1022, this statute was given full force and effect. In that case members of the board of directors of the school district were enjoined from paying themselves for labor rendered by them in making repairs to the school building of their district. It is true this is not an injunction case seeking to prevent the illegal paying out of moneys of the school district, but is a case of the seeking of recovery of money which has been illegally paid out. We cannot see that the right of the school district to this relief is any less than its right would be to injunctive relief upon the threatening of such illegal paying out of its funds; the relief here sought being asserted within the time prescribed by our statute of limitations. It is not contended here that a contract of the nature of these contracts does not fall within the ban of the statute above quoted. Indeed, we do not think it could be successful-

fully so contended in view of the broad provisions of the statute, though contracts for the transportation of children are not specifically mentioned therein.  Our decisions in *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204, and *State ex rel. Gladwin v. Cheney*, 67 Wash. 151, 121 Pac. 48, are in harmony with the conclusion we here reach, though those decisions are not so directly in point as *Miller v. Sullivan, supra.*  In its last analysis, the correct determination of this controversy becomes largely a question of fact; that is, as to whether or not Mr. and Mrs. Libby, as a marital community, were pecuniarily interested .in these contracts from the time of their making.  We see no escape from the conclusion of the trial court that they were so interested.  This, we think, renders the contracts unlawful and Mr. and Mrs. Libby, together with Gordon and Williams, liable for the refunding of the moneys received thereon in proportion as determined by the trial court.  As to what extent Gordon and Williams might have lawfully contracted with Mr. and Mrs. Libby wholly independent of and after the making of the transportation contracts, short of an actual assignment of those contracts, we need not now inquire.

Some contention is made rested upon the theory that Mr. and Mrs. Libby would be criminally liable for failure to send their children to school under the compulsory education provisions of our school law, § 5072, Rem. Comp. Stat. [P. C. § 2163], and that except for these contracts with Gordon and Williams they would have been unable to so send their children to school. We do not think the facts disclosed by the evidence warrant the conclusion that they would have been without these contracts unable to send their children to school, though there is some evidence to show that it was somewhat difficult for the district to obtain per-

sons to perform the service of transporting the children to school. Another answer to this contention is, Mr. and Mrs. Libby would not have been criminally liable for failure to cause their children to attend school if they would have had "sufficient reason" for not doing so. Manifestly, if conditions were such as to render it impossible for them to send their children to school, that would have been a sufficient reason in the eyes of our compulsory education statutory provisions to have rendered them free from criminal liability.

The judgments are affirmed.

TOLMAN, C. J., MAIN, BRIDGES, and ASKREN, JJ., concur.